BISHOP, J.
A pedestrian who finds himself on his way across a street when the traffic signal changes from “Go” to “Stop” may be impelled by his common sense to retrace his steps to the safety of the nearest curb, but he is not compelled by the law to do so; by continuing on his journey to the opposite curb he may be guilty of negligence, but not of a crime.
The charge upon which the defendant was convicted was that he “being a pedestrian crossing the roadway of Hill Street... at an intersection where traffic was then and there controlled by a traffic control signal device and by police officers, did wilfully and unlawfully cross said roadway against a red and stop signal.” This charge was based upon the provisions of law which first appeared (in 1931) as a part of section 131% of the California Vehicle Code, and which now appear, an immaterial alteration having been effected in 1935, as paragraph (a) of section 563, Vehicle Code, reading: “At intersections where traffic is controlled by a traffic control signal device or by police officers, pedestrians shall not cross the roadway against a red or stop signal. ’ ’ At the intersection involved in this case the roadways were those parts of the streets between curbs, for by section 83 of the Vehicle Act “roadway” is defined as being: “. . . that portion of a highway improved, designed or ordinarily used for vehicular travel.”
The evidence discloses that at the time the defendant was arrested traffic was being controlled at the intersection of Sixth and Hill Streets by traffic control signal devices. It further appears, without conflict, that the defendant did not cross Hill Street, as charged, but crossed Sixth Street. Without pausing to consider whether or not this variance between *Supp. 781 charge and proof amounts to a failure of proof, we note that it also appears, without dispute, that the defendant began his journey across the roadway while the traffic was advised by the signal devices in operation that it could “Go” and that he was already several steps into the roadway when the signal changed. Two or more persons who had progressed as far as had the defendant before the signal changed to “Stop,” ventured no further in the direction they had been going, but turned about and returned to the sidewalk they had lately quitted; the defendant walked on to the opposite sidewalk.
In order to avoid being classed as a criminal, what is a person caught in progress across a roadway, when the traffic signal changes from “Go” to “Stop,” to do? Is he to stop in his tracks (and possibly in those of the street car company also) and await the release of a “Go” signal? Such a construction of the code provisions would result in so much danger to the trapped pedestrian and in such a snarl of traffic that it is to be avoided if another solution of the question is reasonably possible. (Department of Motor Vehicles v. Industrial Acc. Com., [1939] 14 Cal. (2d) 189, 195 [93 P. (2d) 131].) Equally absurd would be the requirement that he turn at right angles to the course he had been following, so as to proceed with the new flow of traffic and in the path of the vehicular traffic. Only two alternatives are left him; either to retrace his steps or to go on. But if either of these choices violates the injunction that “pedestrians shall not cross the roadway against a red or stop signal,” both do, for movement in either direction would be against the signal.
There is a construction of the code provision which avoids the absurdities noted, and does so without placing any strain upon the words the legislature selected. Of the many meanings in which the word “cross” may be employed, there is one in common use that aptly fits the word as it appears in the section we are considering. It is the first definition of “cross” as a verb given in 25 C. J. S. 10: “To pass from side to side.” It is among the definitions given in Webster’s New International Dictionary (2nd ed.): “To pass or extend from one side to the other of; ... as, to cross a stream ...” Within this definition, a person born in the Middle West does not cross the continent if he journeys either to the Pacific Coast or to the Atlantic Seaboard. Nor does one cross the continent by plane between sunrise and sunset, if the first hundred miles of the trip is made before sunrise, or the last hundred miles is *Supp. 782 made after sunset. So also, one who has advanced into the roadway, even though but a few steps, before the appearance of the “Stop” signal, cannot be said to cross the roadway against that signal, whether he returns to the curb he has just left or continues on to the opposite curb.
Support of some strength is found for our conclusion in cases holding that it is not a violation of an ordinance prohibiting the crossing of roadways except in crosswalks for one alighting from a street car in a safety zone to cross from the zone to the curb outside a crosswalk. In Croxall v. Broadway Department Store, (1932) 127 Cal. App. 153, 156 [15 P. (2d) 546], the court stated: “. . . the pedestrian crossing from the safety zone to the curb does not come within the strict letter of the ordinance relating to those who are crossing the roadway from curb to curb. (The ordinance, whose pertinent provisions are quoted, uses no such term as “curb to curb”; that appears to-be the court’s interpretation of what it means to cross a roadway.) See also Brockway v. Western Union Tel. Co., (1938) 29 Cal. App. (2d) 244, 247 [84 P. (2d) 524], and Western Union Tel. Co. v. Hudson, (1936) 82 F. (2d) 992, 995.
Further support for our conclusion is found in the provisions of section 476, added to the Vehicle Code in 1939. This section deals with the respective conducts of vehicular traffic and of pedestrians as affected by green or “Go,” yellow or “Caution” and red or “Stop” signals. So far as pertinent to our problem it is provided that when the green or “Go” signal appears, “Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk,” but that when the red or “Stop” signal is shown, “No pedestrian facing such signal shall enter the roadway until green or ‘Go’ is shown alone.” Reading sections 563 and 476 together, they appearing as parts of the same code, we conclude that a pedestrian may not, where traffic control signals are in operation, enter upon the roadway until the green or “Go” signal is shown, but that when it is shown, he may not only enter upon but proceed across to the opposite side of the roadway, even though the signal changes to red or “Stop” before he completes his passage.
The judgment of conviction is reversed and the cause is remanded to the municipal court for a new trial.
Shaw, J., and Fox, J., concurred.